S06A1681. HUNTER v. THE STATE.
(640 SE2d 271)

SEARS, Chief Justice.

The appellant, Arkeen Hunter, appeals from his conviction for felony murder stemming from the death of 79-year-old Sarah Price.[1]

---

[1] The crimes occurred on January 4, 2003, and Hunter was indicted on December 17, 2003,

On appeal, Hunter contends, among other things, that the evidence is insufficient to support his conviction; that he received ineffective assistance of counsel; and that the State improperly commented on his right to remain silent. Because we find no merit to these contentions or to Hunter's other contentions, we affirm his conviction.

1. On January 4, 2003, at approximately 3:00 p.m., the victim, 79-year-old Sarah Price, went to a Piggly Wiggly store in Savannah, Georgia. Several witnesses testified that they were at the Piggly Wiggly that day and heard a woman scream for help. Ms. Price was in the parking lot of the Piggly Wiggly and told the witnesses that, as she was walking, she had been knocked down by two black men driving a truck. One of the witnesses, Judy Wardlaw, testified that Ms. Price told her that "[t]wo black men in a truck took my purse, or it got hung on their car. I don't know what happened, but they've got my purse and they pulled me down." An ambulance transported Ms. Price to a nearby hospital, and she died later that day from a head injury.

Eric Reed, a friend of Hunter and of Hunter's co-defendant, Jermaine Wright, testified that he saw Hunter and Wright about 4:00-4:30 p.m. on January 4, 2003. Reed testified that Hunter and Wright came to pick him up; that Hunter was driving his car; and Wright was riding in the passenger seat. Reed testified that Wright stated that he had just robbed somebody. When asked if Hunter had stated that he was involved, Reed added that Hunter had never told him that. Reed also denied that Hunter had told him that he had to dispose of an "old lady's pocketbook." Reed did testify, however, that, after they dropped Wright off somewhere, Hunter told Reed that Wright was stupid and that he had "snatched a lady's pocketbook." Reed also testified that, several weeks after the crime, he saw Wright; that Wright stated that the "lady had died"; that Wright had the victim's ID with him; that he was using it as an ashtray; and that he threw the ID out of the car. In addition to Reed's testimony, the State had a police officer testify about a prior statement that Reed had made to him. According to the officer, Reed stated that, on the day of the crime, Hunter had told Reed that he (Hunter) and Wright had robbed somebody and that he (Hunter) had to dispose of the purse.

---

for felony murder, with robbery as the underlying felony; for robbery by sudden snatching; and for robbery by use of force. On February 9, 2005, a jury found Hunter guilty of all counts of the indictment, and on the same date, the trial court sentenced Hunter to life in prison for the felony murder conviction. The trial court merged the two robbery convictions with the felony murder conviction. On February 24, 2005, Hunter filed a motion for new trial, and on September 19, 2005, he filed an amended motion for new trial. On March 7, 2006, the trial court denied the motion for new trial, as amended, and on March 10, 2006, Hunter filed a notice of appeal. The appeal was docketed in this Court on June 6, 2006, and was submitted for decision on briefs.

Reed also stated that Hunter said that Wright was stupid and that Wright had robbed an old lady.

On July 3, 2003, Hunter made three statements to the police. In one statement, Hunter denied being at the Piggly Wiggly, stating that he did not know where it was. In a second statement, he stated that he drove to and went inside the Piggly Wiggly on the day of the crime, but he denied any knowledge of the crime. In another statement, Hunter stated that he drove by Ms. Price in a Dodge Dynasty; that he heard the back door on the driver's side of his car open; that that was where Wright was seated; that he heard the door close; and that he looked in his rear-view mirror and saw Ms. Price fall; that Ms. Price's purse was in his car; that he took Wright home; and that Wright took Ms. Price's purse with him.

Several days after the crime, Ms. Price's driver's license was found by a postal worker in the gutter of a street in Savannah, and sent back to her family at the address on the license. The license had a burn mark on it.

Having reviewed the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Hunter guilty beyond a reasonable doubt for the crime of felony murder.[2]

2. Hunter contends that he received ineffective assistance of counsel. We conclude, however, that this contention is without merit.

(a) Before trial, the State made Hunter a plea deal pursuant to which the State agreed that, if Hunter pled guilty to robbery, he would receive five years in prison and the murder charge would be dismissed. Hunter first contends that trial counsel was ineffective for failing to properly advise him regarding this plea offer. In this regard, Hunter states that trial counsel failed to advise him that in exchange for his plea to robbery, the felony murder count of the indictment would be dismissed. Trial counsel, however, testified at the hearing on the motion for new trial that she did inform Hunter that the murder charge would be dismissed, and the trial court credited her testimony in denying the motion for new trial. "While this Court is to review a trial court's legal conclusions de novo, this Court will uphold a trial court's findings of fact on a claim of ineffective assistance of counsel unless those findings are clearly erroneous."[3] Because the trial court's finding that Hunter was informed that the murder charge would be dismissed is not clearly erroneous, this allegation of ineffectiveness is without merit.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *White v. State*, 281 Ga. 20, 23 (635 SE2d 720) (2006).

(b) Hunter next contends that trial counsel failed to object to impermissible hearsay testimony by Eric Reed about statements that Wright had made to Reed. We conclude, however, that Reed's testimony was admissible under the co-conspirator exception to the hearsay rule, and that trial counsel thus was not ineffective in failing to object to it.[4]

(c) Hunter also contends that trial counsel was ineffective in cross-examining a police detective about statements that Hunter's father had made to him. More specifically, Hunter contends that trial counsel's cross-examination opened the door for the State to question Hunter's father about the entire statement that Hunter had made to him, and that Hunter's father testified that Hunter told him that he (Hunter) was driving the car when the purse was stolen and that he had seen the victim fall. However, because this evidence is cumulative of other properly admissible evidence, we conclude that, even assuming that counsel provided deficient performance in questioning the detective, there is not a reasonable probability that, but for this deficient performance, the outcome of the trial would have been different.[5]

(d) Hunter claims that trial counsel was ineffective in failing to object to hearsay declarations made by the victim to certain witnesses. However, because the witnesses testified that the victim made the statements to them after they went to her immediately after the incident, we conclude that the statements were admissible under the res gestae exception to the hearsay rule.[6] Thus, trial counsel did not provide deficient performance in failing to object to them.

(e) Hunter claims that trial counsel was ineffective when she failed to object when a police detective testified regarding a prior statement that Eric Reed had made to him. More specifically, Hunter claims that the detective's testimony regarding Reed's prior statement was not inconsistent with Reed's testimony at trial; that the detective's testimony amounted to improper bolstering of Reed's testimony; and that trial counsel was ineffective in failing to object. However, a review of the transcript shows that Reed's prior statement was inconsistent with his testimony to the extent that, in the prior statement, Reed stated that Hunter had told Reed that Hunter and Wright had robbed somebody and that Hunter had disposed of

---

[4] *Brooks v. State*, 281 Ga. 14, 17-18 (635 SE2d 723) (2006).

[5] See *Fortson v. State*, 280 Ga. 435, 436 (629 SE2d 798) (2006) ("In ruling on an ineffectiveness claim, this Court need not analyze the deficient performance prong if the Court determines the prejudice prong has not been satisfied.").

[6] *Cox v. State*, 274 Ga. 204, 206 (553 SE2d 152) (2001).

the purse. These prior inconsistent statements were properly admitted into evidence,[7] and trial counsel was not ineffective in failing to object to them. To the extent that the detective testified to statements that Reed made to him that were consistent with Reed's testimony, we conclude that, even if trial counsel provided deficient performance in failing to object to them, Hunter has failed to show that, if trial counsel had objected, there is a reasonable probability that the result of the trial would have been different.[8]

(f) We have examined Hunter's remaining allegations of ineffective assistance of counsel and find them to be without merit.[9]

3. Hunter contends that the trial court erred in denying the motion for mistrial that he made after the State allegedly placed his character into evidence. At trial, the State introduced a tape of Hunter's interview with the police. When the State played the tape, it failed to redact a portion of the tape in which an officer stated to Hunter, "You said you got out of jail." Defense counsel objected to the statement, and made a motion for mistrial. The trial court denied the motion, but gave a curative instruction informing the jury to "disabuse [their] minds totally and completely of the last comment on the tape that was made by the detective" and to not give any consideration to that comment in reaching a verdict.

A mistrial is appropriate when it is necessary to ensure a defendant's right to a fair trial, and the determination whether a mistrial is necessary is within the trial court's discretion.[10] Moreover, the exercise of that discretion will not be disturbed on appeal unless it was abused.[11] Here, given the trial court's prompt and pointed curative instruction and given that the improper reference was inadvertent, we conclude that the trial court did not abuse its discretion in denying the motion for mistrial.[12]

4. Hunter's contention that the State improperly commented on his right to remain silent is controlled adversely to him by *Rowe v. State*.[13]

*Judgment affirmed. All the Justices concur.*

---

[7] *Cummings v. State*, 280 Ga. 831, 833 (632 SE2d 152) (2006).

[8] *Brooks*, 281 Ga. at 17-18.

[9] These allegations are that trial counsel did not adequately prepare for trial; that trial counsel erred by failing to object to certain photographs; and that trial counsel erred by failing to object when the State elicited testimony that certain witnesses failed to appear for trial.

[10] *Culler v. State*, 277 Ga. 717, 719 (594 SE2d 631) (2004).

[11] Id.

[12] Id.

[13] 276 Ga. 800, 805-806 (582 SE2d 119) (2003).

DECIDED JANUARY 22, 2007.

*Jennifer R. Burns*, for appellant.

*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.